We'll hear argument this morning in Case 13-299, Clark v. Rameker. Mr. Shanmugam. Thank you, Mr. Chief Justice, and may it please the Court. This case concerns the Bankruptcy Code's retirement funds exemption. By its plain terms, that provision categorically exempts funds that have been set aside for retirement in certain tax-exempt retirement accounts. Funds in an inherited individual retirement account qualify for the exemption, first, because they were set aside for retirement when they were deposited in the account, and second, because an IRA remains tax-exempt after it passes to a beneficiary upon the death of its initial owner. Respondents asked this Court to exclude inherited IRAs by engrafting an additional limitation onto the statute. Under their interpretation, the funds must be in an account that not only is tax-exempt but also possesses certain, quote, objective features, end quote. Kennedy It's true. I think that the Respondents have to explain why their position doesn't commit us to a difficult case-by-case adjudication down the line, and yours is a more simple approach. On the other hand, it seems to me that you really render the words retirement funds superfluous. Shanmugam Well, I don't think that that is true, Justice Kennedy. Kennedy I mean the words in the bankruptcy statute. Shanmugam Yes. And let me explain why we think that retirement funds are not superfluous here. First of all, we think that retirement funds serves a clarifying function. With the result that, in the event that if Congress were to add something to one of the many tax provisions that are incorporated into the provision that is not a retirement account, that would be excluded. In other words, the phrase retirement funds makes clear that only funds that have been set aside in a retirement account are exempted. But I want to say something more broadly about this argument concerning superfluity, which I think is really at the core of Respondents' textual argument here. I think that argument really misapprehends, with respect, the structure of the statute. It may very well be true that, at least as matters currently stand, the phrase retirement funds does not independently exclude anything from the scope of the statute. But this statute, of course, includes to the extent that clause. And our interpretation gives the phrase retirement funds meaning. It gives it a broader meaning. Retirement funds may mean But, Mr. Shanmugam, it could have meaning if it were read to refer to the debtor's retirement fund, not anyone's retirement fund. And let me ask you one disturbing feature of this. Congress was very careful when it crafted exemptions from the bankrupt estate, like the Homestead exemption. It said, what, 22-something over $22,000, the car, 37-something. Is it likely that Congress would have created an exemption so large, this one is claimed to be $300,000, for funds that are immediately usable by the bankrupt? I mean, this big pot of money gets exempt from the creditor's claim. It just seems incongruous, considering how narrow Congress has made the other exemptions. Two points in response to that. First, Justice Ginsburg, with regard to the admittedly very high cap on retirement funds, it is true that a beneficiary of an inherited IRA has the ability to withdraw the funds immediately, though Congress has created considerable tax incentives for such an individual not to do so. But the same could be said of, for example, an individual who holds a 457B account — that's a retirement account for employees of certain governmental entities and nonprofits — who has left employment and then goes into bankruptcy. So, too, with regard to an individual who holds a Roth IRA, at least with regard to the contributions that the individual made to that IRA. And, in fact, while the cap limits the amount of money that can be exempted at $1.25 million, it actually also contains exceptions for rollover IRAs, such that an individual can exempt essentially an unlimited amount, all of which is to say that Congress did intend this exemption to be quite expansive. Now, to go to the first part of your question, Justice Ginsburg, and the text of the statute, the court of appeals, unlike Respondent — Respondent's here — Sotomayor, how many of those other items are immediately withdrawable? Meaning the Roth IRA has the 10 percent penalty if you withdraw it. But not with regard to the money that was originally contributed to the account. That is to say — Well, because the taxes have already been paid, but there's a penalty. How many of those others? Well, there is no penalty with regard to contributions. And, indeed, there is no penalty with regard to the entire amount to the extent that it is being used for one of the specified nonretirement purposes for which the funds can be withdrawn without penalty. And those are the educational and medical and other purposes that we set out in our brief. The two primary types of accounts for which money can be withdrawn without penalty are Roth IRAs and these 457Bs that I was referring to a minute earlier. Now, I do want to say just one more thing about the text of the statute in response to Justice Ginsburg. The court of appeals, unlike Respondent's here, offered an interpretation under which retirement funds would mean funds that have been set aside for the debtor's own retirement. But the fundamental flaw with that interpretation is that it reads an additional limitation into the statute, this debtor-based limitation. And as we point out in our brief, all 11 of the other exemptions in Section 522D contain references to the debtor. And many of those references, including the Homestead exemption, specifically refer to uses by the debtor. And so in order to invoke the Federal Homestead exemption — Sotomayor, how would a retirement fund accept in this situation an inherited one? Wouldn't that always be a debtor's? Well, that is — The name is generally a debtor's. Well, that is certainly true, which is to say that that limitation would obviously exclude inherited IRAs and inherited IRAs alone. And I would just note parenthetically that if there were any evidence that Congress had actually focused on this issue, and if, in fact, Congress's intent had been to exclude inherited IRAs, this would be a very odd way of going about effectuating that intent through this negative inference from the phrase retirement fund. Well, let's suppose there are two debtors who are in a somewhat similar situation, but one simply inherits $300,000 from a parent who dies, and the other is the beneficiary of an IRA that the parent had. Why would Congress want to give preferential treatment in bankruptcy to the latter and not the former, that both of them have — can use the money immediately? Justice Alito, that is simply because, and this is a very important because, the funds remain in a tax-exempt retirement account. And while it is true that the degree of tax deferral in the hands of a beneficiary is perhaps not quite as great as it is in the hands of an initial owner, it is still considerable. The funds remain tax-exempt while they remain in the account. And while it is true that the beneficiary of an inherited IRA must take certain required minimum distributions, the account holder, the beneficiary, can stretch out the tax consequences over the course of her own life. I tend to think of this in rather simple terms. Retirement funds, why would Congress provide this treatment for retirement funds? Because it doesn't want debtors to be with — completely without means of supporting themselves after they reach retirement age. But in this situation, particularly where the beneficiary is a relatively young person, the money is either all going to be withdrawn immediately long before retirement age is reached, or if it's taken out on a — on an annual basis, much of the money will be distributed before retirement. In this case, it would be roughly two-thirds. Wouldn't that be correct? It would be distributed to — to the beneficiary prior to 65. I actually don't think that that is correct as an empirical matter, Justice Alito. And as we explain in our brief, as long as the annual rate of return is a reasonable one, it will often be the case, and indeed it's a quite plausible scenario, that a beneficiary will end up with more or roughly the same amount in the account at retirement as at the time the — Well, at the very least, Mr. Shanmugam, it's a — it's a one-way ratchet. You absolutely cannot add to these funds. Is that correct? Yes, that is correct. I mean, that seems like a strange feature of a retirement fund, that you can't add to the fund, and that, moreover, you have to deplete the fund at least to a certain amount. It may not be the whole thing. You may try to keep it as a retirement fund in order to get tax savings, tax benefits for it. But at least in part, you're going to have to deplete the fund. You can't add to it. That doesn't seem like a retirement fund in people's natural understanding of the language. Well, at the risk of — of seeming flip, Justice Kagan, I think that one point that's important to keep in mind is that this is still denominated a retirement account. And why that's actually substantively important and not just a formalism is because that has significant tax consequences. The funds remain exempt as long as they remain in the account. And to go to Justice Kagan's case, I think that's important. But wasn't the purpose of that, however, to see that the beneficiary wasn't going to be hit with a huge tax liability if it had to take the whole thing? But it also gives the beneficiary the ability to use the funds in the account for her own retirement. Now, just to be clear, we don't think that whether or not the beneficiary in fact does so is relevant precisely because of the language that Congress chose. And, Justice Alito, to go to the underlying policy justifications here, and I do so with the proviso that we obviously think that the plain language disposes of this case without any need to weigh the policy justifications, but we think that there are, in fact, important and compelling policy justifications that support our interpretation. And we think that it is, therefore, no accident that seven States in the last three years alone have expressly exempted inherited IRAs. The first of those policy justifications is that Congress wanted to link bankruptcy exemption to tax exemption. And there is some evidence in the legislative history to support that as the policy justification for this very expansive provision. After all, Congress enacted the retirement funds exemption knowing that there were already other exemptions or exceptions that covered a vast range of retirement accounts. And yet Congress deliberately chose this very broad language in order to provide even broader protection and really to link bankruptcy exemption — bankruptcy protection to tax protection. Why would Congress want to do that? I think really for ease of application. Congress in the tax code has obviously already made judgments about which types of retirement accounts should be subject to special treatment. And the retirement funds exemption simply creates congruence between the bankruptcy code and the tax code. Now, to be sure, we don't think that that's the only relevant policy justification here. And we do think that the fact that Congress has made considerable tax benefits available to the holders of inherited IRAs is indeed significant. And Congress for two decades had provided this ability for the beneficiaries of inherited IRAs to stretch out the tax consequences over the course of their entire lifetimes. And so exempting inherited IRAs really does encourage beneficiaries to take advantage of those available tax benefits. Ginsburg. But in this very case, I mean, this was a fund of, what, $400,000? They — the daughter, the beneficiary, had already spent $150,000 of that. She had taken out more than the required minimum distributions before she went into bankruptcy, and then she took out one additional extra distribution immediately after going into bankruptcy. But I think it is fair to say that regardless of the circumstances of my clients, many individuals who are in this position will use these inherited IRAs as retirement tools or, at a minimum, as long-term financial planning tools. And again, it is certainly congruent with that policy interest, an interest that is to exempt inherited IRAs. Kagan. Mr. Shanmugam, can I go back to Justice Kennedy's first statement? Because I wasn't quite sure I understood your answer. He asked why did they use this retirement funds phrase at all. And you said, well, just in case Congress adds something later to these sections. And then you thought that there was a second point, too. And what was the second point? I think my second point, Justice Kagan, was simply that the use of the phrase retirement funds really makes clear the purpose of this provision in a way that I think would obviously not be clear absent that reference to retirement funds. But why would that be important to Congress, that it wanted to clarify the purpose of the provision, if you are saying that everything that was currently in, that was currently — that currently received tax protection in these sections counted? Well, I think that it is admittedly descriptive. And to be sure, Congress at the time it enacted this provision may not have been 100 percent sure that everything in those tax provisions was, in fact, a retirement account. Because if you take a look at Section 501 of the Internal Revenue Code, it may be many things, but immediately clear it certainly is not. And so Congress may have just wanted to ensure that only funds that have been set aside in retirement accounts are exempted, whether with reference to the tax code as it currently stands or with regard to anything that might subsequently be added to the tax code in future. But, again, I think it's really important to underscore the structure of this particular provision. I think when you have a statute that contains a phrase like to the extent that, it is, in fact, entirely natural for what comes before that clause, the antecedent, if you will, to set out a broad category which is then narrowed by the to the extent that clause. And so, for example, if you had a statute that created a tax break for sports teams to the extent that they are members of the major professional sports leagues, you wouldn't immediately think that the phrase sports teams has to somehow do some exclusionary work. It would be perfectly natural to view sports teams as an incredibly broad category that could include little league teams as well, but then view the to the extent that clause to narrow it to teams that play in major league baseball or the national football league. So, too, here, retirement funds simply refers to funds that have been set aside for retirement accounts, to funds that have been set aside and remain in the enumerated types of retirement accounts. Roberts. Well, you still have the problem of figuring out set aside, you know, by whom. It seems to me that if you inherit one of these IRAs and somebody, you know, asked you about it, you could say, well, my mother, you know, you wouldn't say, would you, my mother left me a retirement account? You would say, my mother left me $300,000. Well, I — you might say either of those things, Mr. Chief Justice. I know, but I think it's more likely that you would be describing — if you said a retirement account, it would seem to be confusing to the normal English speaker. Well, if you say what the amount is, I mean, that's what you got. And you could take it all out the next day, which is why the retirement aspect would seem to be incidental. Well, I don't think that there actually is anything odd about that. And I think in part that's because of what these accounts actually are. We refer to them as inherited individual retirement accounts, and there are a few references to inherited IRAs in the statute. But they really remain individual retirement accounts in the most relevant sense. I don't think there's really any dispute that even in the hands of a beneficiary, an individual retirement account remains tax-exempt under Section 408E of the Internal Revenue Code. I'm not sure why tax exemption is the point. I thought the point of retirement funds was that you would keep the money to a certain designated age, 59 and a half. I think that's what your opponent is arguing. The tax consequences are irrelevant to the Roth IRA. So it can't be that tax exemption is the meaning of a retirement fund. But I think, Justice Sotomayor, that is what it means in the context of this statute. And our interpretation — Sotomayor, and we'll get back to you on this in a moment — is that it includes Roth IRAs. Right. The Roth IRAs remain tax-exempt. That is to say, as long as the funds are in the account, they remain tax-exempt under the statute. They are tax-exempt, period, because taxes were paid when the money was put in. That's correct. But they also remain tax-exempt while they're in the account. And so to give you an example, if, for instance, you have an IRA or a Roth IRA and you engage in certain transactions, you move funds out of a particular stock and move them into another stock, you would ordinarily have to pay capital gains. But as long as they remain in the account, they are not subject to taxation. That's all that tax-exempt means in the statute. But I think more broadly, our interpretation of the statute really reads the statute as an integrated whole. To be sure, it might be a very different statute if it stopped after the phrase retirement funds. And someone might be able to argue, for instance, that if they put money aside in a general purpose investment account, that would qualify as long as they intended to use those funds for retirement. But under our interpretation, retirement funds has to be read in the context of the to-the-extent-that clause. And that clause really explains how it is that the funds are set aside for retirement. Funds have to be set aside in one of the enumerated types of accounts in order to qualify. And I think this discussion really points up the fundamental textual flaw with Respondent's interpretation. Respondents talk at great length in their brief about these supposed objective features that define a retirement account. As we explain in our reply brief, many of those features are not shared by all of the enumerated accounts in the statute. But more importantly, Congress specified, Justice Sotomayor, the one objective feature that matters for purposes of the application of the exemption, and that is the tax-exempt status of the funds in the account. And that is all that is required in order to figure this very expansive provision. Ginsburg. So for your purposes, you wouldn't need to be you would be you would have a, I think, anti-case if the statute didn't use the word retirement funds. It just exempted funds in an account that is exempt from taxation, period. It may very well be, Justice Ginsburg, that such a statute would have the same meaning at least as the tax code is currently constituted. But again, we think that it gives meaning to the word retirement, which is really the only term that Respondents argue would be superfluous under our interpretation, by saying that the word retirement serves a clarifying function. It makes clear that only funds that have been set aside in retirement accounts can be exempted. And so if Congress were, say, to tack some new form of educational savings account onto the back end of Section 408 of the tax code, money that is set aside in that account would be excluded, and that would be a circumstance under which the term retirement would do some additional work. But I think it's important to underscore, and this is why I really want to focus on the structure of this particular statutory provision, that retirement funds has a broader meaning under our interpretation. It is a broader category, which the phrase, to the extent that, then narrows. It is simply that the word retirement does not necessarily do any exclusionary work. But that does not mean that the word retirement is superfluous. It simply means that as a matter of natural grammar, Congress started with a broader category, retirement funds, and then proceeded to narrow it with the to the extent that clause that follows. Our interpretation naturally follows from the structure of the text of the statute, and it is certainly preferable as a textual matter to Respondent's interpretation, which, however it is sliced, ultimately reads an additional limitation into the text of the statute. And this is not the paradigmatic sort of statutory interpretation that we've heard. Ginsburg. But it would just be defining retirement funds to mean the debtor's retirement funds. And that is the additional limitation that the court of appeals read into the statute. I would respectfully submit that that is not quite the interpretation that Respondents are advancing. But this is the one exemption in section 522d that contains no reference to the debtor. And if Congress had intended to say to limit the provision to funds that had been set aside for the debtor's own retirement, Congress certainly knew how to say so. And I would just say one other thing before reserving the balance of my time, and that is that this is not the paradigmatic statutory interpretation case where you have the text of the statute on the one hand and the legislative history of the statute on the other. There is no relevant legislative history here. There is no evidence in the long history of BAPC that says that. Kennedy. So all we have is the statute on one hand and common sense on the other. I would respectfully submit that if you think that this is that sort of case, that seven State legislatures might have a beef with that, Justice Kennedy, because seven States do. Ginsburg. Ginsburg.  I would like to ask a question about this exemption, because it applies to a particularly high percentage of the States. Does the debtor's home State, has the debtor's home State adopted this exemption? No, Justice Ginsburg. But what is really unique about this exemption is that it applies to individuals regardless of whether they opt for the Federal or the State exemption regime. So this was a case in which my client's Petitioners opted for the Wisconsin exemption regime, but were entitled to invoke this exemption precisely because it applies regardless of which regime debtors proceed under. And in our view, that is an additional policy argument in addition to the ones that I set out earlier that supports our interpretation. Congress clearly wanted to provide uniformity across the Federal and State regimes. Our interpretation provides that uniformity. So would you say that the other interpretation that says it has to be the debtor's retirement account? Well, no, because under that interpretation, by virtue of the fact that States have as a policy matter opted to provide protection for inherited IRAs, you would have disuniformity depending on whether or not an individual was proceeding under the exemption regimes of one of these States. And Justice Kennedy? If we look, if we look to what the States did, are there some statements, some recitation of purpose that does weigh in on the common sense side of the equation in your favor? In other words, the States were doing this for some particular reason. We have been unable to find any legislative history in those seven States, and we have certainly looked for it. I would respectfully submit that the policy interests are the ones that I've articulated. And in addition to the ones I've articulated, I would just add that our interpretation does provide additional encouragement for individuals to save for retirement in the first instance, knowing that if they leave funds to an intended beneficiary, those funds will be protected in the event that the beneficiary goes into bankruptcy. My point is simply that in the absence of any legislative history, this is not a case in which this Court should weigh the policy judgments itself and impose them on the broad language that Congress actually wrote. It should give effect to that language, and if the event — in the event that Congress wants to create an exception, it can obviously do so. And I would reserve the balance of my time. Roberts. Thank you, counsel. Ms. Minnelli. Mr. Chief Justice, and may it please the Court, the parties agree that retirement funds are funds set aside for the day when an individual stops working. Funds in an inherited IRA do not meet that definition. When the beneficiary of an inherited IRA files for bankruptcy, the funds in the inherited IRA are no longer set aside for the original owner's retirement, nor are they set aside for the beneficiary's retirement. The beneficiary of an inherited IRA can withdraw all the funds in the account at any time, for any reason, without restriction. But that's true of a beneficiary who receives a retirement fund from an employer-sponsored retirement account. And there is at least one amici, a tribune, who says that makes — why would we impute into Congress a desire to treat employer-sponsored retirement funds differently from employee-sponsored funds? Two responses to that, Justice Sotomayor. First, as we point out in our brief, that is a situation that's very unlikely to arise because in most qualified retirement plans, including 401Ks, the plan provides that beneficiaries have to take the funds in the account in a lump sum. That's the reason that Congress in Section 402C11 of the Tax Code provided that non-spousal beneficiaries of such accounts can roll those funds over into an inherited IRA. The other point, though, is that qualified retirement plans — Sotomayor, but an inherited IRA is tax-exempt. It's — it can't be alienated. So in bankruptcy, that would still be protected. Let me — let me clarify, Justice Sotomayor. Qualified retirement plans, including 401Ks, are subject to the provision in ERISA that requires that they be non-alienable. Because of that, those plans never come into the bankruptcy estate to begin with under Section 541C2 of the Bankruptcy Code. IRAs are not subject to that requirement of ERISA. So there is a difference in treatment between 401Ks and IRAs. To begin with, that is the result of Congress's conscious decision in ERISA not to make IRAs subject to that requirement. It had — Kagan, please, I'm sorry. It doesn't — I don't think it affects the interpretation of this specific provision. Can I go back to your initial point? And just — I mean, it seems to me that these are kind of hybrids. You were saying, oh, they're nothing like retirement accounts for the — for the reasons that you gave. But they are something like retirement accounts, which is that they're tax-deferred and that there's an enormous incentive for people actually to try to use them as retirement accounts to the extent that they don't have current pressing needs. So, you know, given that, why shouldn't we — given they're sort of half and half, why shouldn't we just treat them as retirement accounts, if nothing else, than for administrative simplicity? Justice Kagan, I don't believe they are half and half. I do believe they are fundamentally different. All the — all the retirement plans that are governed by the enumerated provisions of the tax code share two things in common. One is that there is some restriction on the ability to take funds out prior to 59 and a half or retirement age. The other is that one can leave the funds to grow intact until retirement. Neither of those is true of an inherited IRA. Kagan. But in a case in which one inherits one of these things as a young person or even as a middle-aged person, they actually, to the extent that you don't take the option to take it out at once, it really looks like a retirement account to a person. So I just did some back-of-the-envelope calculations. Suppose you inherit a $200,000 IRA. Looks to me as though you're going at the age of about 50 or so. Looks to me you're going to get a check for about $5,000 a year. And your account can grow far more than that. So it ends up sort of looking like one's retirement portfolio. It's certainly true that the accounts can grow depending on the age at which they're inherited and the rate of return. There's no question about that. I think the question is whether the tax-exempt treatment of inherited IRAs has anything to do with retirement. And I don't think that decision — that can be reconciled with the conscious decision that Congress made not to permit non-spousal beneficiaries of IRAs to treat the funds as their own. Kennedy, would you agree that it, pursuant to the Petitioner's counsel's last comment, that it does affect the retirement decision of the original owner? No, I would not, Justice Kennedy. Well, actually — In other words, there's a benefit to — that this is an encouragement for the original owner to retire because he knows that this can be handed down. Two points in response to that. First, I think that to the extent such a motivation exists, it's extremely attenuated. But more importantly, encouraging retirement savings is not a motivation behind the bankruptcy exemptions. It certainly is a motivation behind the tax code. It's not a motivation behind the bankruptcy exemptions. Chapter 7 has as its basic bargain the notion that the debtor gets a fresh start, that is, a discharge of prepetition debt. And in return for that, the debtor turns over all prepetition property to the trustee for equitable distribution among creditors with legitimate claims. Now, there are exceptions to that, which are the bankruptcy exemptions, which make sure that the debtor has sufficient assets remaining after the bankruptcy to provide basic life necessities, and that includes assets saved to be a substitute for wages in retirement. So the bankruptcy exemptions really balance a set of competing interests. On the one hand, the debtor's interest in obtaining a fresh start. On the other hand, the creditor's interest in a fair and equitable distribution on account of their legitimate claims. And also, society at large's interest in ensuring a continued flow of consumer credit. Those interests have been carefully balanced by Congress, and I submit that it doesn't make sense to read the text of the bankruptcy exemptions in a way that furthers the goal of saving for retirement. That just doesn't fit into the considerations Congress balanced. Ginsburg. The point below had a simple take on this. It says that the retirement funds means funds set aside for the debtor's own retirement. Petitioner tells us that you don't defend that definition, the definition that retirement funds means the debtor's retirement funds. Is that so? Well, Justice Kagan, I apologize. Is it so that you do not defend the position that retirement funds means funds set aside for the debtor's own retirement? I think our basic position is that at the time the bankruptcy petition is filed, which is the time that the exemptions are determined and the only relevant time for purposes of this case, the funds are not set aside for anyone's retirement. They're no longer set aside for the original owner's retirement because the original owner has died. They're not set aside for the debtor's retirement because of the characteristics that I've previously alluded to. The debtor can't make additional contributions, can't roll them over into his or her own retirement account. Why are you fighting, Justice Ginsburg? I'm not going to argue with you on this, but I just need to understand what you see as a difference. Let me clarify, Justice Sotomayor and Justice Ginsburg. I think that the upshot of our position may well be that it's — it only — only the debtor's retirement funds are relevant. I think that's so because the date on which the exemptions are determined is the petition date. And because of that, I think it's effectively the case that it is only the debtor's retirement funds that are relevant. Now, that makes sense because the purpose of the bankruptcy exemptions is to ensure the support of the debtor and the debtor's dependents. Now, just to respond quickly to your question, Justice Ginsburg, I'm just puzzling why you want to disassociate yourself from the clear position of the Court below that retirement funds means the debtor's retirement funds. Why would you want to do that? I don't want to do that, Justice Ginsburg. And I think that's because the debtor's interest in the motor vehicle 3, the debtor's interest in the furnishings 4, the debtor's interest in jewelry 5, the debtor's interest in 1225 — in 1225.  And then we get to number 12, and number 12, oddly enough, just says retirement funds. It doesn't say anything about the debtor, and moreover, it has four paragraphs earlier in which it describes retirement funds, in which it says nothing about the debtor. And then there are three paragraphs prior to that in which, once again, we're  talking about the debtor's interest in real property, et cetera, and then we say retirement funds. Yes. I guess that's the reason you didn't want to say the debtor's retirement funds. Let me respond to that, Justice Breyer. First, just to finish my response to Justice Ginsburg's question, we are not abandoning the reasoning of the court of appeals. The court of appeals looked at the objective characteristics of inherited IRAs and said that inherited IRAs are not set aside for anyone's retirement. And we — that is precisely the argument that we're advancing. Now, Justice Breyer, as to your point, I don't think that the use of the phrase the debtor in those other exemptions at all helps Petitioner's argument, and this is the reason. Only the debtor's interest in property can come into the bankruptcy estate in the first place. Section 541A plus — I see your argument here. I just thought there's no easy answer one way or the other, because this is a case where common sense, frankly, in my case, doesn't get me anywhere. And then so I sort of looked at the statute — Well, I think it answers that as well. And the statute kept talking about the debtor's interest in everything else, and then we get to this one. It says retirement funds. That's correct, Justice Breyer. But the reason that these other — and by the way, this appears on page 5A of the appendix to the red brief. The reason that the other Federal exemptions use the term the debtor is in order to set a cap on the value of the exemption. So as you said, D.I. says the debtor's aggregate interest not to exceed a certain amount in value in real property. Two is the debtor's interest not to exceed a certain amount in value in one motor vehicle. The use of the debtor there does not suggest that the exemption is limited to the debtor's interest in property. That's already implicit, because under 541A1, only the debtor's interest in property can come into the estate in the first place, so only the debtor's interest in property is exempt. The reason similar language doesn't appear in D.12 is that the cap on the value of the retirement funds exemption appears elsewhere in the statute, in Section 522N. There are also certain — just to offer a complete response to this, there are also certain of the exemptions that talk about assets for the use of the debtor's interest, giving that as an example of why I find this not an easy case. I don't see an easy answer to it, that's all. I understand your point, and that's why you're making a different point of what retirement funds are. Well, I think once one agrees that retirement funds are funds set aside for retirement, this does become a fairly easy case, because these funds are not set aside.  They were at one time. And so a retirement fund is a fund that was set aside for retirement. At some point in time, someone set aside for retirement. Now, the question is, they were set aside for retirement, and no one denies that. And so do they change their nature because a different person now owns the fund? Now, if you were talking about Pearl Earrings, you would say they stay Pearl Earrings no matter who retains it. If you say retirement funds, you say, but they were retirement funds, when did they change their nature? And at that point, you have to make your argument, which I think is more — is complicated, but perhaps I understand. And he makes his argument, says, let's keep this simple. They were retirement funds, period. Okay? And that's where I am, if you want to know. I mean, that's — I have to figure it out. Justice Breyer, two points. First, the nature — unlike a Pearl Earring, the nature of these funds fundamentally changes when the original owner dies and the interest passes to a non-spousal beneficiary. And one thing that might help make that clearer is the difference between what happens when a spousal beneficiary receives the interest and when a non-spousal beneficiary receives the interest. A spousal beneficiary can treat the retirement funds as her own. She can roll them over into her own retirement accounts. She can make contributions. There's a penalty for taking the funds out prior to age 59 and a half, assuming it's a traditional IRA. None of those things are true of inherited IRAs, which require the non-spousal beneficiary to begin taking the funds out immediately. Kagan. Kagan. Here's one thing that's a little bit perplexing to me. These are not arcane accounts. Tons and tons of people have IRAs and they die every day, and then they're inherited IRAs. So, I mean, this is something that applies to masses of people. And it seems to me that if Congress meant to exclude these inherited IRAs, why wouldn't it have said so? This is not like a hidden thing, and then all of a sudden you realize, oh, that was there. We should have said something about it. And this is pretty obvious that an enormous number of people are going to have these accounts, and you write language that suggests, because of the listing of the sections, that these are ‑‑ these accounts are in those sections. Why wouldn't have Congress done something more explicit to exclude them? Well, Justice Kagan, I believe Congress did exclude them by using the phrase retirement funds as to doing something more explicit. Well, that's at least a very ambiguous way to exclude them. Then we have to get into this whole question of what did they mean when they said retirement funds? Are these retirement funds? And why are they retirement funds? I mean, that's pretty ‑‑ As to whether Congress could have done something more explicit, I think one thing that's important to understand is that inherited IRAs are not some special kind of account. Rather, they're simply an IRA of whatever type, a traditional IRA, a Roth IRA, any other kind of IRA, that has been passed to a nonspousal beneficiary. And the same thing is true of qualified retirement plans. In ‑‑ for all of those plans, under our reading, as they are all exempt in the hands of the original owner, and they are all exempt in the hands of a spousal beneficiary. It's only the fundamental change in treatment when they are inherited by a nonspousal beneficiary that makes them not retirement funds. And so for that reason, I think it was perfectly understandable of Congress to put the limit retirement funds into the statute. And I also think, Justice Kennedy, that I hope that that starts to answer your question as to why our reading doesn't commit the courts to a difficult case-by-case approach. I don't believe it does. I think the analysis is actually quite similar to the analysis this Court engaged in in Rousey, where it had to answer the question, is a traditional IRA similar to a stock bonus, pension, profit sharing, or annuity plan? In that case, the Court framed the question as, do the objective characteristics of the account make this more like those plans, which the Court saw as substitutes for wages, or more like simply a tax-deferred savings account? Why do you suppose seven States have provided an exemption for inherited IRAs? I don't know, Justice Alito. But I would say that States frequently do provide more generous exemptions than the Federal Government. And the unlimited homestead exemption that's available in some States is a good example. I don't believe that it's consistent with the structure and purpose of the bankruptcy exemptions to permit a debtor to exempt a potentially unlimited amount of funds that can be used for current consumption that are not in any way set aside for the debtor's own retirement. There is no other exemption in the bankruptcy exemptions that works that way, that withholds that kind of unlimited amount of free cash from creditors' legitimate claims. Can I go back to the language? Of course. The retirement funds, your definition of retirement funds, are there any retirement funds that do not fall within the denominated sections under your definition? If one looked at the phrase retirement funds in isolation, I think it could have a much broader meaning. So it could include, you know, the cash in a box under the bed that someone is saving for retirement. The fact that Congress chose to link the exemption to the specific tax-exempt accounts covered by the enumerated sections of the tax code, I think, makes clear that retirement funds has to be understood in that context and that an objective interpretation of the phrase retirement funds is more appropriate, and I think here we agree with Petitioners, than a subjective interpretation. But then what's the to the extent that language doing there? Well, but that does seem a kind of narrowing language, but I don't believe your objective test, there would be nothing to narrow. I don't believe it necessarily is narrowing language. I mean, the phrase lawyers to the extent they are women doesn't suggest that all women are lawyers. And I think the same thing is true here. These set up two independent requirements, which is how all the courts who have addressed the question have viewed it. Were that not so, Congress would not have needed to write this elaborate phraseology. It could have simply said we exempt funds in an account that's exempt from taxation. I'm sorry, I didn't get that, because lawyers to the extent that they are women does see them. It's saying, you know, we have this big category, it's lawyers, and now we have a smaller category, which is women lawyers. So the to the extent that takes you from the big category to the small category. Kennedy, yes, I agree with Justice Kagan. And you argue against your own box under the bed analogy by, as Justice Kagan indicates, saying that to the extent is indicates that retirement funds may be greater than what's in the clause. It seems to me that you should argue the other way around, as Justice Kagan is indicating. Or am I missing something? Let me try to explain again. I think that, and maybe this was not a good example, but I think that the phrase lawyers to the extent they are women does not suggest that all women are lawyers, which I think is what Petitioner's reading suggests. Retirement funds to the extent that those funds are in a fund or account suggests that all funds in such a fund or account are retirement funds. I don't think that's logically true. So ---- Roberts. I might have lost you, but no one says lawyers to the extent they are women. They say lawyers who are women. Correct. But nonetheless, I think that the phrase to the extent that is extremely helpful to our analysis, because if it weren't the case that these are two independent requirements, that phrase wouldn't be necessary. It would merely be necessary to say funds in a fund or account that is exempt from taxation. That wasn't what Congress did. Congress chose to use the phrase retirement funds. We think that choice should be given effect. And this is a particularly odd statute in which to read the phrase retirement funds out of the statute altogether, as Petitioner's reading would do, because it is the direct object of the exemption, and it's the purpose of the exemption. The purpose of the exemption is to ensure that debtors are allowed to retain assets that they may need to live on in retirement. So it strikes me as quite odd to say that retirement funds essentially has no function in this statute. To the extent that retirement funds were going to be defined as funds in a fund or account that is exempt from taxation, Congress could have said retirement funds defined as or retirement funds, i.e., but it didn't. It set up two separate requirements. Breyer, but the problem, I mean, basically, is that you're not going to make us go into subjective intent. You don't want us to know somebody. I'm never going to retire, says X, but when I'm 70-and-a-half, I'm going to take that money out of there and buy my own airplane. Okay. That's beside the point. While the daughter who inherits it thinks this is fabulous, I'm going to keep it until my retirement. At least I'll be able to, you know, that's out of the question. Okay. Once you put that aside, then you're falling back on, well, are they the retirement funds of the debtor? And it's pretty hard to do that. That's what the court of appeals did, because of the language of the rest of the statute. And now, once you're past those two points, then where are we? Because now it seems what we're doing is just drawing a line that's somewhat arbitrary, makes some sense policy-wise, but it just seems like a line that says inherited ones, no, not inherited ones, yes. There's nothing arbitrary. Breyer, and you have some theory behind that, but what's — how can I do more than that? There's nothing arbitrary about that line, Justice Breyer. I don't think it's arbitrary either. But, I mean, the trouble is, what is it resting on? If it's not resting on subjective intent, it's not resting on these words, refer to the funds of the debtor, what does it rest on? It's resting on the objective characteristics of the account, which is precisely what this Court relied on in Rousey in determining whether funds were a substitute for wages in retirement. I think the question here is quite similar. Are these funds set aside for retirement? To answer that question in Rousey, the Court looked to the objective characteristics of the account, and specifically the fact that there was a penalty for taking funds out before age 59 and a half, and that the owner was allowed to leave the funds in until age 70 and a half, at which time they had to begin to be withdrawn. Neither of those characteristics is present here. To the contrary, beneficiaries of an inherited IRA can take out all the funds at any time and cannot leave them intact for their retirement, but have to begin taking them out right away. And I think that is, you know, far from arbitrary. It rests on a fundamental difference between retirement funds in the hands of their original owners or in the hands of spousal beneficiaries and those same funds in the hands of non-spousal beneficiaries. If there are no further questions, we ask that the judgment below be affirmed. Roberts. Thank you, counsel. Mr. Shanmugam, you have 5 minutes remaining. I'm sorry, 6 minutes. Thank you, Mr. Chief Justice. I'd like to start with the text of the statute. The Court of Appeals, in its opinion, defined retirement funds as funds that have been set aside for the debtor's own retirement. And I think it's clear from the arguments this morning that Respondents really don't defend that interpretation, and you may be left wondering why. I would respectfully submit that the reason why is the reason that was exposed in Ms. Spinelli's colloquy with Justice Breyer. That interpretation really would nakedly read an additional limitation into the statute. And I want to address Ms. Spinelli's argument as to why that is not so and explain why that is, in fact, so. If you take a look at the 11 exemptions that Justice Breyer recited, it is true that to some extent the references to the debtor simply confirm what Section 541 already makes clear, namely that the debtor, after all, has to have a property interest in the property in question at the time the debtor goes into bankruptcy. But those exemptions also contain limitations relevant to the debtor's use of the property. And if you take a look at page 5A of Respondents' brief and the text of Section 522d1, the Homestead Exemption, that text makes this point clear. The Homestead Exemption reads, and I'm quoting, that the debtor or a dependent of the debtor uses as a residence. That is precisely the type of limitation that the court of appeals was reading into the Retirement Funds Exemption. And, of course, that sort of limitation is entirely absent. And it's not just D.1. You can find them in D.3, D.4, and others of the exemptions. Now, I think that because of that problem, Respondents instead offer this objective features interpretation. But while Ms. Spinelli made some references to the objective features in the course of her argument, she didn't actually tell us what those objective features actually are. And I think that the problem, once you start to identify those features, is that it inevitably leads you into a fact-intensive case-by-case analysis as to whether a particular type of exemption works. Breyer. I think her point now, it's been very helpful to me, the argument, but I think that it's a by and large point. You see, by and large, the funds in the hands of the original setter aside of the funds, by and large, they're used for retirement of that person, and therefore they're retirement funds. Not always, but by and large. And in the hands of the inheriting person, by and large, they're not. And so that's why she thinks the one falls within and the other falls without the phrase retirement funds. Well, let's focus on the objective features that Respondents did identify in their brief. And two of those features were limitations on early withdrawals and required minimum distributions after retirement. And as we explained in our reply brief, at least as to some of these types of accounts, even in the hands of the initial owner, those limitations would not apply. And I would respectfully submit that if there's one thing that is reasonably clear from the legislative history, it's that Congress certainly wanted to provide protection for all of these types of accounts when they are in the hands of the initial owner. And any sort of test like that, a by and large test, would be a recipe for chaos in the lower courts as bankruptcy courts have to try to figure out whether particular types of accounts, even in the hands of initial owners, would qualify. And I want to say just one other thing about tax. Ms. Spinelli referred to this. Scalia. Could you be more specific? What are the particular aspects of other accounts that you think would not qualify? The limitations on early withdrawals, which do not apply to Roths and to 457Bs and with regard to Roths, that is true only with regard to contributions. But of course, the contributions to a Roth can be a very substantial part of the funds in the account, and then required minimum distributions after retirement, which Roth IRAs do not possess. And I want to say just one other thing on the text with regard to Rousey. Rousey itself obviously involved very different language, and Congress was legislating against the backdrop of Rousey when it adopted the Retirement Funds Exemption. But when it adopted that exemption, it contained no limitation on whether or not the accounts and focusing on the one objective feature of the accounts that matters, the tax-exempt status of the funds in the account. And so Rousey, I would respectfully submit, really offers Respondent's little help. I want to say just a word about the policy issue that we were discussing during my opening argument, this question of whether beneficiaries are, in fact, going to be relatively young and therefore more likely to make free use of the funds. First of all, as Justice Kagan pointed out, beneficiaries have every incentive to keep the funds in the account because of the tax benefits. But I think it's more important to kind of understand the reality of this type of situation. It is true that my client, Heidi Heffron Clark, was about 22 years old when she inherited this account. Her parents tragically died at a very young age. But the Department of Labor has indicated that the prime age for inheritance is between the age of 50 and 59. And of course, with regard to retirement accounts in the hands of an initial owner, the funds can be accessed at the age of 59 and a half. So it will often be the case that the beneficiaries will use the funds for retirement. Thank you, counsel. Counsel. The case is submitted.